UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | CASE NO. 1:09-cv-0914-OWW-SKO |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO SEAL** |
| v. | (Doc. 37) |
| AMERICAN DAIRY AND FOOD CONSULTING LABORATORIES, INC., | |
| Defendant. / | |

## INTRODUCTION

Pending before the Court is the motion by Plaintiff Hartford Casualty Insurance Company ("Plaintiff" or "Hartford") to seal confidential information in connection with its motion to disqualify James Wilkins, Esq., and his firm as counsel for Defendant American Dairy and Food Consulting Laboratories, Inc. ("Defendant" or "American Dairy").[1] (Doc. 37.) Hartford moves to place under seal (1) its motion to disqualify and all supporting documents and (2) American Dairy's opposition to its motion to disqualify and all supporting documents, in order to protect the confidentiality of information protected by a Stipulated Protective Order issued by this Court in a separate action

---

[1] Mr. Wilkins provided legal services to Hartford from 1985 to 1992 while he was employed at McCormick, Barstow, Sheppard, Wayte & Carruth LLP. *See Jessen v. Hartford Casualty Insurance Co.,* 111 Cal. App. 4th 698 (2003).

involving Hartford and Mr. Wilkins. American Dairy filed an opposition. (Doc. 40.) Hartford filed a reply. (Doc. 46.)

A hearing on Hartford's motion to disqualify was held on June 4, 2010. Catherine Rivard, Esq., appeared on behalf of Plaintiff, and Mr. Wilkins appeared on behalf of Defendant. During the hearing, the Court invited argument on Hartford's motion to seal. At the conclusion of Hartford's arguments, counsel for Hartford offered to file, and thereafter filed, a supplemental statement in response to the Court's questions, as the motion to seal had not been calendared for hearing. (Doc. 59.)

## BACKGROUND

In 2000, Mr. Wilkins represented a plaintiff in an action against Hartford titled *Johnston v. Hartford Casualty Insurance Co.*, No. CIV F-00-6051 OWW DLB (the "*Johnston* Action"). (Daley Decl. ¶¶ 6, 8 & Ex. A.) In the *Johnston* Action, this Court issued a stipulated protective order in December 2000 (the "Stipulated Protective Order") which stated, in relevant part:

> Any information or material designated as "confidential" will be handled by the receiving party, and all other parties who receive copies of said information and/or material, in accordance with the terms of this stipulation and order. Information and material designated as "confidential" will be held in confidence by each receiving party, will be used by each receiving party for purposes of this action only and not for any business, competitive or other purpose unless agreed to in writing by all parties to this action or as authorized by further order of the Court, and will not be disclosed to, or the substance discussed with, any person who is not a qualified recipient, except as provided in this order.

(Daley Decl. ¶ 8, Ex. A ¶ 7.) The Stipulated Protective Order further provided: "The provisions of this order regarding the use or disclosure of information designated as confidential information will survive the termination of this action, and the Court will retain jurisdiction with respect to this order." (*Id.*, Ex. A ¶ 18.)

In 2002, during the course of an unrelated state court litigation where Mr. Wilkins also represented a party adverse to Hartford, (*Jessen v. Hartford Casualty Insurance Co.*, Fresno County Superior Court Case No. 02CECG00291 (the "*Jessen* Action")), Mr. Wilkins filed a declaration (the "2002 Declaration") that Hartford asserts violated the Stipulated Protective Order. Hartford claims that it objected in the *Jessen* Action to the 2002 Declaration partly on the basis of Mr. Wilkins' violation of the Stipulated Protective Order, but that the *Jessen* court did not address its objections.

(Daley Decl. ¶ 12 & Ex. E.)  The contents of the 2002 Declaration have been a part of the public record since the declaration was filed.

Subsequently, in May 2009, Hartford filed suit in the instant action against American Dairy. In July 2009, Mr. Wilkins made an appearance as American Dairy's counsel.  On December 11, 2009, Hartford filed a motion to disqualify Mr. Wilkins and his firm based upon the alleged substantial similarity of this action to matters Mr. Wilkins had handled for Hartford as its attorney. In support of its motion, Hartford included the 2002 Declaration as an exhibit.  Hartford used the 2002 Declaration to establish how long Mr. Wilkins had worked at his previous firm, McCormick, Barstow, Sheppard, Wayte & Carruth LLP; the existence of an attorney-client relationship between Hartford and Mr. Wilkins; and the formation of Mr. Wilkins' current firm, Wilkins Drolshagen and Czeshinski. (Daley Decl. ¶ 4.)

On February 19, 2010, Mr. Wilkins submitted a declaration (the "2010 Declaration") in support of American Dairy's opposition to Hartford's motion to disqualify, referencing material from the *Johnston* matter.  On April 1, 2010, Hartford filed a motion to seal, claiming that the 2010 Declaration impermissibly violated the Stipulated Protective Order in the same manner as Wilkins had violated the Stipulated Protective Order in the *Jessen* Action in 2002.  Hartford requests that the motion to disqualify, American Dairy's opposition, and all supporting documents be placed under seal.  Hartford contends that the information contained in the parties' pleadings is confidential and subject to the Stipulated Protective Order.  It is this motion to seal that is presently pending before the Court.

## DISCUSSION

**A.     Legal Standard**

Every court has supervisory power over its own records and files, and may provide access to court documents at its discretion. *See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (*citing Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  A motion to seal documents implicates the "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597 (footnote omitted).  In the Ninth Circuit, there is a strong presumption in favor of access to court records. *See Foltz v. State Farm Mut. Auto. Ins. Co.*,

331 F.3d 1122, 1135 (9th Cir. 2003) (stipulated order without more insufficient basis to seal court records). The right to access is not absolute and can be overridden where there are sufficiently compelling reasons. *Id.*

The party seeking to seal a document related to a non-dispositive motion must meet the "good cause" standard set forth by Federal Rule of Civil Procedure 26(c) that applies to protective orders. *Pintos v. Pac. Creditors Ass'n*, __ F.3d __, __, Nos. 04-17485, 04-17448, 2010 WL 2011550, at *8 -9 (9th Cir. May 21, 2010); *see also Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (noting differing treatment of judicial records attached to dispositive motions versus those attached to non-dispositive motions). In the Rule 26(c) context, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks omitted). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

**B.   Analysis**

Hartford contends that the 2002 Declaration attached excerpts of a deposition of Ms. Klug from the *Johnston* Action that had been marked "confidential" (the "Deposition Information"), and that in paragraph 30, Mr. Wilkins quoted from and otherwise described another document subject to the Stipulated Protective Order (the "Paragraph 30 Information").[2] Hartford also asserts that the 2010 Declaration likewise attached the Deposition Information and republished the Paragraph 30 Information. Hartford argues that the material referenced by Mr. Wilkins is confidential, is subject

---

[2] In paragraph 30 of his declaration, Mr. Wilkins referred to the fact that Hartford's applicable and current "Best Practices" claims manual was "first distributed for use on March 3, 1997," "was developed by Hartford's Field and Home Office representatives," and "includes numerous provisions which were issued after the March 3, 1997 initial distribution date." Mr. Wilkins also specifically acknowledged that, although he currently has a complete copy of the manual, he is "precluded from producing it" because of the protective order.

-4-

to the Stipulated Protective Order, and should be placed under seal to prevent it from being viewed by others.

### 1. No Good Cause Determination Was Made As to Particular Documents When the *Johnston* Stipulated Protective Order Was Issued

Pursuant to the good cause standard of Rule 26(c), Hartford has the burden of showing that specific prejudice or harm will result if its motion to seal is not granted. Hartford argues that good cause exists here because the material it seeks to seal was the subject of the Stipulated Protective Order; thus, good cause has already been established with regard to the particular documents referenced in this case that Hartford wishes to seal. (Doc. 37 at 11.)

"Blanket protective orders" like the Stipulated Protective Order extend "broad protection to all documents produced [in litigation], without a showing of good cause for confidentiality as to any individual documents."[3] *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988). Such orders are, by nature, overinclusive. *See Beckman Indus.*, 966 F.2d at 476.

Here, the Stipulated Protective Order was a stipulated blanket protective order in which "the judge signed off on the order without the benefit of making an individualized determination as to specific documents." *Kamakana*, 447 F.3d at 1183. Therefore, Hartford did not have to make a "good cause" showing under Rule 26(c) in the *Johnston* case. *See Beckman Indus.*, 966 F.2d at 476; *see also Foltz*, 331 F.3d at 1133 ("[A] party seeking the protection of the court via a blanket protective order typically does not make a 'good cause' showing required by Rule 26(c) with respect to any particular document.").

Accordingly, Hartford cannot establish good cause to seal the documents in this matter merely by pointing to the existence of a stipulated blanket protective order in *Johnston* where no good-cause determination was made as to any particular document. Rather, Hartford must show good cause why the particular material disclosed in this matter should be placed under seal.

---

[3] Blanket protective orders typically extend broad protection to all documents produced during discovery without a showing of good cause with respect to any individual document.

-5-

### 2. An Alleged Violation of the Stipulated Protective Order Does Not, By Itself, Establish Good Cause to Seal

Hartford further argues that good cause exists because Mr. Wilkins violated the Stipulated Protective Order in the *Jessen* case, and again in the present action, by filing the 2010 Declaration. Assuming, *arguendo*, that Mr. Wilkins violated the Stipulated Protective Order when he filed a declaration in the *Jessen* Action, there is no evidence that Hartford ever sought either to enforce the Stipulated Protective Order in this Court, or to hold Mr. Wilkins in civil contempt in 2002 or thereafter for violating the Stipulated Protective Order. Hartford's lack of enforcement militates against finding that Hartford suffered any specific harm or prejudice from the disclosure. *See On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) (defendant sought enforcement of protective order and sanctions after plaintiff had violated protective order by using confidential information to file separate lawsuit in state court).

Further, Hartford itself republished the 2002 Declaration in whole as Exhibit C to its motion to disqualify in this matter, which weighs against Hartford's generalized assertions that it will be harmed if the information is not placed under seal as Hartford's own counsel did not perceive any potential harm in disclosure of the material.[4]

### 3. Hartford States No Particularlized, Specific Harm That It Will Suffer to Establish Good Cause to Seal

Other than pointing to the existence of the Stipulated Protective Order, Hartford has not demonstrated or identified the specific prejudice or harm that would result if the Court denied Hartford's motion to seal. Rather, it concedes that the Paragraph 30 Information and the Deposition Information are already in the public domain by virtue of the 2002 Declaration. It argues, however, that "PACER vastly increases the public's access to the confidential information, so the harm to Hartford caused by having its confidential information in the record of this case is far greater than the harm originally caused when Mr. Wilkins first violated the Stipulated Protective Order by filing

---

[4] In support of its motion to disqualify, Hartford attached a copy of the 2002 Declaration as Exhibit C. Hartford maintains the disclosure was inadvertent and would never have happened in the first place if Mr. Wilkins had not filed the 2002 Declaration in the *Jessen* Action.

the 2002 Declaration." (Doc. 37 at 14.) Absent an identifiable harm or prejudice resulting from disclosure, however, the fact that more people can access the material on PACER is irrelevant. As noted above, such a broad allegation of harm does not meet the requirements of Rule 26(c).

Moreover, as the Court pointed out at the hearing, the Paragraph 30 Information was already referenced in two previous matters before this Court. *Lozano, Smith, Smith, Woliver & Behrens v. Hartford Cas. Ins. Co.*, No. CV-F-00-7039 REC LJO (E.D. Cal. filed May 1, 2001, and June 22, 2001); *Johnston v. Hartford Cas. Ins. Co.*, No. CV-F-00-6051 OWW DLB (E.D. Cal. filed May 2, 2001, and July 13, 2001). Hartford argues in its supplemental statement that this information was not substantially disclosed by the Court's orders in either case, which only recognized that the applicable claims manuals were entirely revised in 1997 and continued to be revised. In contrast, Hartford maintains that in the 2010 Declaration, Mr. Wilkins disclosed more detailed information about the manual, including the types of personnel who developed the manual, the specific dates of revisions, and the character of the revisions. (Doc. 59 at 2.)

Proponents of protective orders must make particularized showings of the competitive harm likely to result from the disclosure of protected information. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991). In this case, Hartford makes no showing of the competitive harm likely to result from the disclosure of the personnel who developed the claims manual, the specific dates of its revisions, or the nature of those revisions. Thus, Hartford has not shown that it would suffer any specific harm or prejudice absent the sealing of the information contained in the Paragraph 30 Information.

Further, Hartford points out in its supplemental statement that none of the information in Donna Klug's confidential deposition transcript was repeated in the Court's orders in either *Lozano* or *Johnston*. (Doc. 59 at 2.) During her January 2001 deposition, Ms. Klug described how Hartford trains its claims adjusters, how frequently and for how long, and revealed the subject matter of Hartford's training. Although such information may be subject to a protective order, *cf. Sanchez v. Prop. & Cas.*, No. H-09-1736, 2010 WL 107606, at *2 (S.D. Tex. Jan. 7, 2010), as already noted, this information became public in 2002. *See United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 39,

40 (S.D.N.Y. 1975) (denying protective order when information had already been made public). Hartford has not demonstrated the economic and competitive value of this information that is more than nine years old, which would cause Hartford specific harm or prejudice in the absence of an order to seal.

Hartford's reluctance to make a specific showing of harm resulting from disclosure may stem from a generalized concern that such specific arguments will create a roadmap to competitors or other litigants about the potential uses for the confidential information disclosed. Hartford, however, does not identify the *type* of harm it might suffer, e.g., commercial harm resulting from disclosure to competitors or that disclosure may tactically disadvantage Hartford in unrelated litigation.[5] Moreover, given the age of the material Hartford seeks to seal, and the length of time it has been in the public domain, the Court is especially reluctant to infer what harm or prejudice Hartford might suffer if the material is not sealed in this case. The Court cannot provide the relief Hartford seeks based on the assertion that somehow, in some unidentifiable way, disclosure will be prejudicial to Hartford.

In sum, Hartford has not demonstrated the specific or particularized prejudice or harm that would result if its motion to seal were denied. Because Hartford has failed to show good cause for the Court to grant its motion to seal, the Court DENIES the motion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to seal is DENIED.

IT IS SO ORDERED.

**Dated:   June 21, 2010**              /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE

---

[5] Although Hartford argues that Mr. Wilkins is using the information he received in *Johnson* to disadvantage Hartford, the Court notes that Mr. Wilkins has had access to this information. Thus, a motion to seal will not alleviate Hartford's concerns in that respect.