UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY,**<br>            **Plaintiff,**<br><br>      v.<br><br>**AMERICAN DAIRY AND FOOD CONSULTING LABORATORIES, INC.,**<br>            **Defendants.** | **1:09-cv-0914-OWW-SKO**<br><br>**MEMORANDUM DECISION REGARDING PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. 75)** |

## I. INTRODUCTION.

Plaintiff Hartford Casualty Insurance Company ("Plaintiff") proceeds with an action for declaratory judgment against American Dairy and Food Consulting Laboratories, Inc., ("Defendant").

On December 11, 2009, Plaintiff filed a motion to disqualify Defendant's counsel, James Wilkins ("Wilkins"), on the grounds that Wilkins previously represented Plaintiff and is therefor prohibited by California's Rules of Professional Conduct from representing Defendant. (Doc. 21).

Defendant filed opposition to Plaintiff's motion to disqualify Wilkins on February 19, 2010. (Doc. 30). Plaintiff filed a reply on April 12, 2010. (Doc. 46).
///

1

1  The Magistrate Judge conducted a hearing on Plaintiff's motion
2 to disqualify on June 4, 2010. (Doc. 57). On June 17, 2010, the
3 parties were served with the Magistrate Judge's order denying
4 Plaintiff's motion. (Doc. 60).

5  Plaintiff filed the instant motion for reconsideration of the
6 Magistrate Judge's order on June 1, 2010. (Doc. 75). Defendant
7 filed opposition to Plaintiff's motion for reconsideration on July
8 12, 2010. (Doc. 80). Plaintiff filed a reply to Defendant's
9 opposition on September 13, 2010. (Doc. 82).

## II. **FACTUAL BACKGROUND**

**A. Plaintiff's Claim for Declaratory Relief**

In March 2007, Defendant acquired properties located at 240 State Highway 140 and 220 Third Street in Gustine, California ("Property"). (Complaint at 2). Defendant applied for a policy of insurance with Plaintiff on or about May, 2007. (Complaint at 2). Effective May 23, 2007 through May 23, 2008, Defendant was the named insured on a policy ("Policy") issued by Plaintiff. (Complaint at 2). The Policy insured Defendants for direct physical loss to the Property, subject to various terms, conditions, limitations, and exclusions. (Complaint at 2). At the time Plaintiff issued the Policy to Defendant, Plaintiff was informed and believed, based on express and implied representations made by Defendant, that the Property was actively used by Defendant for the manufacturing and processing of dairy products. (Complaint at 2).

On or about May 28, 2009, Defendant filed a claim with Plaintiff for a vandalism and theft loss that occurred at the Property on May 14, 2008 ("Claim"). (Complaint at 2). Plaintiff

**2**

conducted an investigation of the Claim under a full reservation of rights. (Complaint at 2).

According to the complaint, after taking the depositions of several of Defendant's officers, Plaintiff learned that the Property was never operated or otherwise occupied by Defendant. (Complaint at 3). Plaintiff denied coverage for the loss that occurred on May 14, 2008 based on a vacancy provision within the Policy (Complaint at 4-5).

The complaint seeks a declaration that (1) the Policy does not cover Defendant's claim due to the vacancy exclusion provided in the Policy; and (2) Plaintiff may rescind the policy based on material misrepresentations Defendant made intentionally in the application for the policy and in presenting the Claim.

**B. Defendant's Counter-Claim**

Defendant asserts a counter-claim alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraud, and reformation. Defendant contends it relied on the expertise of Plaintiff's authorized and appointed agents Renaissance Insurance Group, LLC ("Renaissance") and J. Helzer ("Helzer") in obtaining the Policy. (Doc. 23 at 2). Defendant alleges that Helzer and Renaissance understood the nature and extent of Defendant's operations at the Property. (Doc. 23 at 3). Defendant states that Helzer assured Defendant that the policy he was procuring would provide immediate, full, and complete coverage of the Property notwithstanding the fact that actual operations at the Property would be delayed for a period of months pending efforts to obtain necessary permits and completion of renovation efforts. (Doc. 23 at 3). Defendant also contends that

**3**

on April 9, 2009, Plaintiff conducted an inspection of the Property and raised no potential coverage problems based on the condition of the Property. (Doc. 23 at 6). Defendant alleges that it expected and relied on Plaintiff to raise any coverage concerns based on the April 9 inspection. (Doc. 23 at 6.).

On April 21, 2008, Plaintiff gave Defendant notice that a renewal policy would be canceled effective July 12, 2008 due to the fact that the Property was vacant. (Doc. 23 at 7). The notice did not suggest that the vacancy issue would in any way impair or impact the coverage that would be in effect on the Property through July 12, 2008. (Doc. 23 at 7). Helzer assured Defendant that the Property would be fully insured through July 12, 2008.

**C. Wilkins' Past Representation of Plaintiff**

From 1985 to 1995, while employed at the law firm McCormick, Barstow, Sheppard, Wayte, & Carruth LLP ("McCormick"), Wilkins provided legal services to Plaintiff. By 1988, Wilkins was directly involved in handling legal matters for Plaintiff and directly communicated with Plaintiff's personnel. (Shingleton Dec. at 18). Wilkins provided legal services to Plaintiff in approximately twenty cases.

Plaintiff's motion to disqualify Wilkins identifies four cases which Plaintiff contends are substantially similar to the instant action between Plaintiff and Defendant. In connection with a claim referenced by Plaintiff as the "'087" claim, Wilkins provided an opinion to Plaintiff regarding Plaintiff's liability under an insurance policy for acts of theft and/or vandalism to an insured's agricultural equipment. Wilkins reviewed Plaintiff's file, spoke with the adjuster assigned to the '087 claim regarding witness

**4**

statements, and spoke with the insurance agent regarding the insurance contract. Plaintiff avers that Wilkins was actively involved in Plaintiff's investigation into the '087 claim.

Wilkins provided advice concerning an insured's claim for vandalism perpetrated on a radio tower in a claim referenced by Plaintiff as the "'435 claim". "At issue in the '435 claim was whether payment should have been made to the named insured, who leased the damaged equipment, or the lessor, who was named as a loss payee." (Motion to Disqualify at 6).

Wilkins defended Plaintiff in an action referred to by Plaintiff as "the Brown and Bryant Action" ("Brown Action"). At issue in the Brown Action was an insured's claim that Plaintiff misrepresented pertinent policy provisions, unreasonably delayed action on the insured's claim, and conducted an improper investigation of the claim. Wilkins also defended Plaintiff in an action referred to by Plaintiff as the "Duarte Action," which entailed an insured's claim that Plaintiff failed to provide a reasonable explanation of the basis of its actions. Plaintiff contends that both the Brown and Duarte Actions involved claims of bad faith.

### III. **LEGAL STANDARD**

A party may object to a magistrate judge's order within fourteen days of being served with a copy of the order. Fed. R. Civ. P. 72(a); E.D. Cal. Local R. 303(b) (stating that a magistrate judge's order becomes final fourteen days after issuance). A district court reviews a motion to reconsider a magistrate judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil

**5**

Procedure 72(a). Under this standard of review, a magistrate's order is clearly erroneous if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure. *R.B., ex. rel. F.B. v. Napa Valley Unif. Sch. Dist.*, 496 F.3d 932, 943 (9th Cir. 2007). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991).

## IV. <u>DISCUSSION</u>

### A. Governing Law

Rule 3-310 (E) of the Rules of Professional Conduct of the State Bar of California prohibits the successive representation of clients in certain circumstances without the informed written consent of the current client and former client. The rule provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Pursuant to Rule 3-310(E), "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." *E.g. People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999).

**6**

Whether an attorney should be disqualified in a successive representation case turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation. *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 709 (Cal. Ct. App. 2003). Where the relationship between the attorney and the former client was direct, it is presumed that confidential information has passed to the attorney.[1] *Id*. A reviewing court may not delve into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship. *Id*.

Disqualification depends upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation. *Id*. The governing test requires that the party moving for disqualification demonstrate a "substantial relationship" between the subjects of the antecedent and current representations. *E.g. Faughn v. Perez*, 145 Cal. App. 4th 592, 604 (Cal. Ct. App. 2006). Successive representations are "substantially related" when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and

---

[1] There is no dispute that the relationship between Wilkins and Plaintiff was direct.

**7**

legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues. *Id*. (quoting *Jessen*, 111 Cal. App. 4th at 713). California's definition of "substantially related" is essentially the same as the formulation found in section 132 of the Restatement Third of the Law Governing Lawyers, which provides that the present representation will be considered "substantially related" to the prior representation if there is a substantial risk that the present representation will involve the use of confidential information acquired in the course of the prior representation. *Id*. at 605 (citation omitted).

The burden is on the party seeking the disqualification to establish by a preponderance of the evidence that a substantial relationship exists. *See H.F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d 1445, 1452 (9th Cir. 1991); *see also In re Charlisse C.*, 45 Cal. 4th 145, 166 n.11 (2008). Although a moving party need not disclose confidential information in order to satisfy its burden, evidence that "could be disclosed without defeating the purpose of protecting confidential information" must be presented where it is required to permit the court to determine the existence of a substantial relationship between past representation and the litigation before the court. *See Faughn*, 145 Cal. App. 4th at 607.

**B. Plaintiff's Claims of Error**

    **1. The Magistrate Judge's Factual Determination Regarding Whether the '087 Claim Entailed a Recision Issue**

Plaintiff contends that the Magistrate Judge erroneously concluded that recision was not at issue in the '087 claim. The

**8**

motion for reconsideration avers:

> [T]he Magistrate Judge erroneously concluded that [rescission] was not "at issue in . . . the '087 Claim[.]" The Magistrate Judge's conclusion is clearly erroneous. Undisputed evidence in Hartford Casualty's papers showed that one of the issues in the '087 Claim was whether Hartford could rescind the policy. Motion to Disqualify, at pp. 5:26-28, 17:11-13, 31:7-9; Reply to Motion to Disqualify, at p. 5:15-16. *Hartford Casualty did not use the term "rescind" because it characterized the issue as whether Hartford Casualty would be "bound" (i.e., unable to rescind) by an insurance agent's factual misrepresentations in an insurance application.* Id. Accordingly, Hartford established that rescission based on misrepresentations in an application was at issue in the '087 Claim.

(Motion to Reconsider at 3) (emphasis added).

Plaintiff concedes that it did not identify recision as an issue in the '087 in the motion to disqualify. (Id.). Contrary to Plaintiff's assertion, the issue of whether an insurer is "bound" by the representations of an insurance agent is not necessarily the same as the issue of whether the insurer is entitled to recision. For example, an insurer would not be "bound" by the representations of an insurance agent who lacked actual or apparent authority; in such an instance, no contract is formed with the principal insurer, and the legal concept of recision is irrelevant. *See, e.g., California Indemnity Ins. Premium Finance Co. v. Fireman's Fund Ins. Co.*, 40 Cal. App. 4th 1633, 1638 (Cal. Ct. App. 1995) ("a signature on behalf of another person would require authorization by the party who is purportedly being bound, in order to create a valid legal obligation"). In light of Plaintiff's failure to identify recision as an issue in the '087 claim in it's motion to disqualify, the Magistrate Judge's finding that recision was not at issue in the '087 claim is not clearly erroneous.

///

Further, because California law provides for recision in a wide range of circumstances, simply stating that recision was at issue in the '087 claim is not sufficient to establish substantial similarity between the '087 claim and the instant action in any event. *See* CAL. CIV. CODE § 1689 (setting forth grounds for recision for wide range of issues including failure of consideration, fraud, unlawfulness, and public interest). In addition to failing to specifically identify recision as an issue in the '087 action, Plaintiff also failed to provide sufficient factual information to establish that the purported recision claim at issue in the '087 claim was substantially related to the recision claim at issue between Plaintiff and Defendant. Accordingly, the Magistrate Judge did not err in making the factual determination that the '087 action did not implicate the type of recision issue raised in this case. Plaintiff failed to meet its burden of presenting evidence from which the Magistrate Judge could infer that, due to the similarities between '087 claim and this case, Wilkins should be presumed to have received confidential information related to the instant action.

**2. The Magistrate Judge's Alleged Failure to Consider Similarities between the '087 Claim and the Instant Action**

Plaintiff contends that the Magistrate Judge failed to consider the following alleged similarities between the '087 claim and the instant action: whether an insurance agent's knowledge is imputed to Hartford Casualty; whether Hartford Casualty is bound by an insurance agent's alleged misrepresentation regarding the scope of coverage; whether Hartford Casualty's prior conduct that allegedly is inconsistent with the policy's terms prevents Hartford

**10**

Casualty from relying on the written terms of the policy; and whether the insured may reform the policy based upon the insured's unilateral mistake. (Motion for Reconsideration at 4). Plaintiff contends that "[t]he Magistrate Judge's failure to consider these additional legal issues is contrary to law." (Id. at 5).[2] These are garden variety issues of fact and law raised by any recision claim based on unilateral mistake and do not implicate any special knowledge.

A review of the Magistrate Judge's order reveals that she considered the legal similarities between the '087 claim and the instant action:

> Hartford explains that the similarities between the '087 and '435 claims (with loss dates in 1989) and this case include the fact that those claims arose from events relating to "property damage caused by theft/vandalism." (Pl.'s Mot. at 17, 20.)...Hartford asserts that the prior matters and the present matter involved an analysis of issues relating to imputation of the agent's knowledge to the insurance company, the insurer's potential liability for the agent's misrepresentations, estoppel and waiver issues arising from an insurer's allegedly inconsistent conduct, and issues relating to reformation based on the insured's unilateral mistake.

(Order Denying Plaintiff's Motion at 6). Plaintiff concedes that the Magistrate Judge's decision recognized alleged similarities of fact and law between the '087 claim and the instant action but complains that "the June 17, 2010 Order includes no analysis of these legal issues in the context of the substantial relationship test." (Motion to Reconsider at 4). Plaintiff is incorrect. The Magistrate Judge's analysis acknowledged general similarities

---

[2] Although Plaintiff advances this argument under the section of its brief pertaining to the Magistrate Judge's alleged erroneous factual determinations, Plaintiff's argument in this section is in fact a claim of legal error.

**11**

between the '087 action and the instant case:

> [W]hile the prior coverage opinion work Mr. Wilkins performed in relation to the '087 and '435 matters and the work performed in the current litigation may involve general issues related to the insurer's liability, that does not make the former and the current representations legally similar. Although the '087 and '435 coverage matters involved claims for property damage due to theft/vandalism, the issues in the present case involve determinations whether the vacancy limitation applies to preclude coverage, which was not at issue in either the '087 or '435 claims, and whether Hartford is entitled to rescind the policy on the basis of its insured's alleged misrepresentations at the time of the purchase of the policy, which does not appear to have been at issue in either the '087 or '435 matters...
>
> General legal issues about the scope of coverage and the mutual understanding of the parties regarding the terms of the policy will be at issue in virtually every insurance claim dispute. In fact, such issues will be encountered in nearly every contract dispute. That generality does not, ipso facto, mean all insurance coverage cases are substantially related. Given the factual and legal differences between the '087 and '435 matters and the present.

(Order Denying Plaintiff's Motion at 7-8). Although the Magistrate Judge's order does not include detailed analysis of each of the alleged similarities between the '087 claim and the instant action, the order does contain reasoned analysis of the critical differences between the '087 claim and the Plaintiff's claims against Defendant. It is clear that the Magistrate Judge fully considered the general similarities identified by Plaintiff. Accordingly, Plaintiff's contention that the Magistrate Judge committed legal error by failing to consider the similarities between the '087 claim and the instant action lacks merit.

### 3. The Magistrate Judge's Conclusion that Plaintiff's Policies and Procedure's have changed

Plaintiff contends that the Magistrate Judge's analysis is

contrary to California law because the Magistrate Judge "denied Hartford Casualty's Motion to Disqualify because Hartford Casualty did not compare its present policies and procedures to the policies and procedures that were in place while Mr. Wilkins represented Hartford Casualty." (Motion to Reconsider at 6-7). Plaintiff notes that "when adjudicating motions to disqualify, courts should not consider the confidential information obtained by counsel during prior representation."  (Id. at 6) (citations omitted).

Plaintiff's argument reflects a misunderstanding of both the Magistrate Judge's analysis and of California law.  The Magistrate Judge did not deny Plaintiff's motion because Plaintiff failed to "delve into the specifics of the communications between the attorney and the former client."  (Motion to Reconsider at 8) (citation omitted).  Rather, the Magistrate Judge found that Plaintiff failed to meet its burden under the substantial relationship test, a burden that does not require a client to disclose confidential information.  (*See* Order Denying Motion to Disqualify at 6).  In explaining the evidentiary deficiencies of Plaintiff's motion, the Magistrate Judge correctly noted that "there is no evidence that Hartford's practices and procedures from 1985 to 1992, or even 1995, were in place when Hartford denied American Dairy's claim in 2009."  (Id. at 12).  Contrary to Plaintiff's assertion, determining whether or not Plaintiff's policies and practices have changed does not require comparison of the substance of any Plaintiff's past policies to its current policies; a competent declaration containing general statements may suffice. *See Faughn*, 145 Cal. App. 4th at 607-09 (discussing types of evidence which could be presented without divulging confidential

**13**

information).³

Plaintiff could have presented evidence within its control "without defeating the purpose of protecting confidential information" in order to satisfy the evidentiary burden identified by the Magistrate Judge to show substantive similarities of alleged confidential information about polices and practices. *See Faughn*, 145 Cal. App. 4th at 607. Although Plaintiff did not have to reveal the substance of any of Plaintiff's policies, practices, or communications during Wilkin's representation, Plaintiff could have, at a minimum, provided a declaration describing how Plaintiff's current policies and practices are similar in material respects to the policies to which Wilkins was privy during his representation and could have disclosed *in camera* the confidential information which remains unidentified. *See id.* at 608 (failure of moving party to submit declarations containing general allegations that policies relevant to attorney's previous representation of client would be relevant and material to current adverse representation rendered motion deficient). The Court of Appeal's analysis in *Faugh* is instructive:

> The declarations submitted do not state that the "Defense Counsel Procedures" referenced in the Hale and VanKoll letters are the procedures that will be applied to plaintiffs' case. Thus, we have no direct evidence helpful in determining if the procedures and practices used in the prior matters involving Attorney Silberberg overlap (in whole or in part) with the procedures and practices that will be used in plaintiffs' case. Further, even assuming that the same "Defense Counsel Procedures" referenced in VanKoll's letter will be used, the record

---

³ Depending on the facts contained in such a declaration, a conclusory assertion of material similarity may not be sufficient. In *Faugh*, the Court of Appeal noted the propriety of conducting an in camera review of confidential information. *Id.* at 602.

**14**

>        does not show that the information contained in that
>        document is material to the present litigation in a way
>        that gives plaintiffs an advantage. The document may
>        refer only to matters that are obvious or mundane.
>        Indeed, Bakersfield Memorial Hospital has not
>        specifically argued that the documents are material to
>        the present litigation.

*Id*. at 608-609.  The *Faugh* Court's analysis also reveals that merely alleging similarity between legal issues implicated in past and present cases is insufficient to satisfy a moving party's burden:

>        Bakersfield Memorial Hospital also contends that
>        plaintiffs' action is substantially related to the prior
>        representations because the prior matters [like the
>        current action, also] involved claims of negligence in
>        connection with the delivery of an infant and the prior
>        cases concerned allegations of nursing negligence...
>
>        This contention is not supported with evidence
>        establishing that the training, practices, or procedures
>        relevant to the care given at the facilities sued in the
>        prior cases is the same as or similar to the training,
>        practices, or procedures relevant to the care given by
>        Bakersfield Memorial Hospital. Again, without evidence on
>        this point, any finding by this court that the
>        relationship exists would have to be based on inference.
>        Without evidence to connect the care given at Bakersfield
>        Memorial Hospital to that involved in the prior cases, we
>        are unwilling to infer it exists, particularly because
>        evidence establishing that connection would not have been
>        difficult for Bakersfield Memorial Hospital to present
>        and would not have disclosed confidential information.

*Id*. at 609.  Here, Plaintiff failed to produce any evidence which indicates that the insurance policies Wilkins advised Plaintiff on are similar to the insurance policy at issue in this action;[4] such evidence could have been produced without revealing any

---

[4] In fact, the only evidence on the record regarding this point is to the contrary. (*See* Order Denying Plaintiff's Motion to Disqualify at 10-11)(discussing Plaintiff's concession that insurance policies are based on existing statutory and decisional law in place at the time the policy is rendered).

**15**

confidential attorney-client information.

As *Faugh* makes clear, Plaintiff's constrained view of its evidentiary burden is erroneous. The Magistrate Judge correctly applied California law, which requires the moving party to present competent evidence in support of a motion to disqualify counsel. *See id.*

Plaintiff also contends that the evidence does not support the Magistrate Judge's finding that Plaintiff's policies and procedures substantially changed in relevant part after Wilkins' representation of Plaintiff ceased. (Motion to Reconsider at 8). Plaintiff complains that:

> The only evidence before the Magistrate Judge regarding Hartford Casualty's confidential information was in the form of a declaration provided by Mr. Wilkins....Notably, Mr. Wilkins did not state in his declaration that the 1997 "'Best Practices' claims manual" reflected policies and procedures substantially different than those in place when he represented Hartford Casualty. See Wilkins Decl.

(Id. at 8-9). Plaintiff's contention fails for at least two reasons. First, the Magistrate Judge's conclusion that Plaintiff's policies and procedures have substantially changed since Wilkins last represented Plaintiff in 1995 is based on reasonable inferences drawn from the record. (*See* Order Denying Plaintiff's Motion to Disqualify at 10-11)(discussing Plaintiff's concession that insurance policies are based on existing statutory and decisional law in place at the time the policy is rendered). More importantly, even if the record did not contain sufficient evidence to support the notion that Plaintiff's policies and procedures are substantially different now than they where during the 1980's and 1990's, the record is also devoid of evidence that Plaintiff's

**16**

current policies and procedures are substantially similar to policies and procedures Wilkins was privy to. In fact, each of the declarations Plaintiff submitted in support of its motion are dated either 2002 or 2003 and thus cannot possibly bear any relevance to the critical issue of whether Plaintiff's current policies and procedures (2008-2010) are similar to those in place during Wilkins' representation. Because Plaintiff failed to carry its threshold burden under the substantial relationship test, the Magistrate Judge did not err in drawing the inference that Plaintiff's practices, policies, and procedures have changed substantially over time. *See Faugh*, 145 Cal. App. 4th at 607 (court may draw inferences from conspicuous absence of supporting evidence that could have been provided without revealing confidential information).

### 4. Magistrate Judges Assessment of the Significance of the Passage of Time

Plaintiff represents that "the Magistrate Judge erroneously concluded, contrary to California law, the passage of time may eliminate a prior substantial relationship." (Motion for Reconsideration at 9) (quotation omitted). Plaintiff's contention is directly contrary to the Magistrate Judge's express analysis. (*See* Order Denying Motion to Disqualify at 10) ("Although time does not overcome or rebut a substantial relationship once it arises, *Brand* does not preclude the passage of time from factoring into the determination whether a substantial relationship exists in the first place") (citing *Brand v. 20th Century Insurance Co./21st Century Insurance Co.*, 124 Cal. App. 4th 594 (2004)). Accordingly, Plaintiff's argument lacks merit as it misrepresents the Magistrate

**17**

Judge's finding.

### 5. Relationship Between Coverage Disputes and Bad Faith Litigation

Plaintiff's final contention does not clearly identify any specific error committed by the Magistrate Judge. Instead, Plaintiff merely restates arguments presented in its motion to disqualify concerning the relationship between coverage disputes and bad faith litigation. (Motion for Reconsideration at 10-11). It is hard to conceive that any California insurance coverage attorney practicing in California since 1990 would not encounter a bad faith claim in a wrongful denial of coverage case. As discussed above, Plaintiff failed to carry its burden under the substantial relationship test because there is no evidence on the record linking Plaintiff's current policies, practices, and procedures with those in place during Wilkins' representation of Plaintiff.

### ORDER

For the reasons stated, Plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.

**Dated:   September 27, 2010**              /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE