# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN DAIRY & FOOD CONSULTING LABORATORIES, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 1:09-cv-00914-OWW-SKO<br><br>**ORDER REGARDING PARTIES' DISCOVERY DISPUTE** |
| AMERICAN DIARY & FOOD CONSULTING LABORATORIES, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Counter-Defendant, | |

On July 13, 2010, after an in-chambers meet and confer process with the assistance of the Court, Hartford Casualty Insurance Company ("Hartford") and American Dairy & Food Consulting Laboratories, Inc. ("American Dairy") stipulated to, *inter alia*, the following agreement regarding American Dairy's March 29, 2010, Motion to Compel:

> 3. With respect to Request for Production of Documents 12-16, relating to the claim manuals and guidelines available for reference in the handling and adjusting of claims, Hartford shall produce, no later than July 23, 2010, the guidelines or manuals for commercial property policies which set forth guidelines that would be applicable to the handling of theft and /or vandalism claims which were venued in California for the time frame January 1, 2008, through December 31, 2009.

(Doc. 81, ¶ 3.)

On September 22, 2010, following a further dispute regarding the above agreement, the parties filed a stipulation with the Court requesting a Telephonic Discovery Dispute Conference to present their disagreement to the Court. (Doc. 84.)

On September 28, 2010, the parties appeared for a telephonic hearing before the Court. (Doc. 88.) In its informal letter brief, American Dairy explained that Hartford had produced only portions of the Best Practices manual ("BPM") that was used during the first half of 2008. According to American Dairy, Hartford had explained that the BPM was replaced in June 2008 with the Claims Excellence Standards ("CES") which Hartford had produced, and Hartford was attempting to ascertain the history of the documents that were produced to satisfy American Dairy's concerns regarding the partial production of the BPM. Since Hartford had provided no documentation or explanation establishing that the entire BPM did not remain in effect through June 2008, American Dairy requested a complete copy of the BPM. Hartford did not provide American Dairy with a complete copy of the BPM.

In its informal letter brief, Hartford confirmed that the CES were implemented in or about June 2008 and replaced the "Best Practices" document (which is apparently the BPM) that had been used prior to that time. Hartford further stated that it had produced the CES relating to the handling of theft or vandalism claims under commercial property insurance policies as well as a copy of the "Best Practices" document relating to commercial property insurance claims that Hartford believed was still in use during the remainder of the period covered by the parties' stipulation – i.e., January 1, 2008, until the introduction of the CES. Hartford noted that,

> Hartford cannot at this time determine definitively which of the materials it produced in the *Johnston* matter were or were not still in use during the first half of 2008. All of those materials, however, have been superseded by the Claims Excellence Standards by mid-2008.

In an effort to resolve the dispute, at the Court's suggestion, the parties agreed that Hartford

would provide a declaration stating that all guidelines or manuals for commercial property policies which set forth guidelines that would be applicable to the handling of theft and/or vandalism claims which were venued in California for the time frame January 1, 2008, through December 31, 2009, would be provided to American Dairy and, if necessary, Hartford would supplement its productions of responsive documents. (Doc. 88.)

On October 8, 2010, Hartford served a supplemental production of documents along with the declaration of Adolfo Quintana ("Quintana Declaration") and a privilege log regarding withheld documents. On October 11, 2010, American Dairy's counsel sent a letter to Hartford's counsel asserting that the Quintana Declaration was insufficient and various documents identified by Hartford in its supplemental disclosures should have been produced.

On October 20, 2010, the parties again contacted the Court regarding their continued disagreement regarding the July 13, 2010, stipulation. On October 22, 2010, the parties appeared for a telephonic hearing in an effort to resolve their discovery dispute. The Court entertained argument from the parties. (Doc. 90.)

The Court finds the Quintana Declaration submitted by Hartford to be insufficient. The Court again directs Hartford to provide a supplemental declaration that provides certification of Hartford's efforts to provide documents responsive as agreed in the July 13, 2010, stipulation. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (burden of resisting discovery is on the party opposing discovery).

This declaration should set forth the good faith efforts of Hartford to produce all discoverable documents encompassed by the parties' July 13, 2010, stipulation:

> the guidelines or manuals for commercial property policies which set forth guidelines that would be applicable to the handling of theft and/or vandalism claims which were venued in California for the time frame January 1, 2008, through December 31, 2009.

The declaration is intended as a verification of Hartford's good faith efforts in searching for and producing responsive documents. To be clear, the declaration shall specify that Hartford has provided the following responsive documents to American Dairy:

1. The relevant portions of the BPM pertaining to commercial property policies which set forth guidelines that would be applicable to the handling of theft and/or vandalism claims which

3

were venued in California for the time frame January 1, 2008, to in or about June 2008; and

2. The relevant portions of the CES pertaining to commercial property policies which set forth guidelines that would be applicable to the handling of theft and/or vandalism claims which were venued in California from in or about June 2008 through December 31, 2009.

The declaration shall further state that the CES were implemented in or about June 2008 and replaced the BPM.

Hartford was further directed to provide American Dairy with a definitive response whether American Dairy's account contained a Large Account Coverage Notice ("LACON") and to produce the necessary documents if American Dairy's account contains a LACON.[1] Hartford's documents related to "Catastrophe Claims Handling," "Agency Claim Settlement," "Quality Assurance Program," "P-Crisp," "PILR," and "SIMSOL" and "Marshal & Swift" were found by the Court to be outside the July 13, 2010, stipulation regarding production of documents or otherwise not subject to production.

Accordingly, IT IS HEREBY ORDERED THAT **on or before October 29, 2010**, Hartford shall provide a declaration setting forth its good faith efforts to provide documents responsive to the parties' July 13, 2010, stipulated agreement that Hartford produce "the guidelines or manuals for commercial property policies which set forth guidelines that would be applicable to the handling of theft and/or vandalism claims which were venued in California for the time frame January 1, 2008, through December 31, 2009," as set forth in this order.

IT IS SO ORDERED.

Dated:   **October 25, 2010**                          **/s/ Sheila K. Oberto**

UNITED STATES MAGISTRATE JUDGE

---

[1] Hartford's letter brief provides there is no document to produce because the LACON is a document specific to a particular insured's account and that Hartford did not believe that American Dairy's account had a LACON. Hartford's belief regarding whether American Dairy's account had a LACON is insufficient to support the non-production of documents. Hartford's letter brief provides there is no document to produce because the LACON is a document specific to a particular insured's account and that Hartford did not believe that American Dairy's account had a LACON.

4